The next case on our docket is being argued. It's the United States of America as the appellee against Nicholas Imhoff, who's the appellant here. So for the appellant we've got Ramit Vindal. Mr. Vindal, you've got 10 minutes. If you want to make a rebuttal, try to stop before it's all gone. I've already played my cards letting people have extra time. So you'll get an extra minute or two if you need it. We have Julie Patton for the United States. So welcome to both of you. Again, thanks for showing up remotely in a time of pandemic. So we'll proceed with Mr. Jindal's argument. May it please the court. As you mentioned, my name is Anik Jindal. I represent the appellant Nicholas Imhoff, and I'd like to reserve two minutes of time for rebuttal. Trooper Federoff conducted a prolonged drug investigation based on merely a hunch, and in doing so, he violated the Fourth Amendment. Unless the court has other questions that they'd like to raise, I'd like to focus today on three critical errors in the district court's opinion, which militate in favor of reversal here. First, the district court erred when it focused its reasonable suspicion analysis on only the dog sniff and not Trooper Federoff's full drug investigation. That error, at a minimum, requires this court to vacate the judgment below. Second, the district court erred in its ultimate conclusion that Trooper Federoff had reasonable suspicion to conduct the dog sniff, and this was contrary to the established rule in at least four other circuit courts. And third, the district court clearly erred when it found that the rental car contract contradicted Mr. Imhoff's stated travel plans. And on the first error that I listed, the district court simply misread Mr. Imhoff's motion to suppress as and we excerpted Mr. Imhoff's motion to suppress below, and the relevant portion of it appears at ER 69 to 72. In that portion, you'll see that Mr. Imhoff challenges the additional extensions of the stop, namely the prolonged questioning and the non-routine criminal drug background check that was run. Counsel, is our standard of review de novo? It is de novo as to the ultimate conclusion regarding the presence of reasonable suspicion. It's clear error as to the underlying factual findings. So even if we agree with you that perhaps the district court should have included the other extensions within this analysis, would any error be harmless if on review we determined that the reasonable suspicion determination was correct? No, Your Honor. Your Honor, because the perceived evasions and inconsistencies in his travel plans only came to light through the prolonged questioning that occurred sort of previous to the dog sniff, but in advance of the records check and the prolonged questioning. And so the one would be to find, as we argue in the briefing, that the district court either overstated or misstated the facts in its factual findings or determined that the dog sniff lacked reasonable suspicion. But if this court finds that the district court had, excuse me, that the trooper had reasonable suspicion for the dog sniff, it doesn't necessarily mean that the trooper had stopped because the reasonable suspicion analysis was dependent on information gathered during the prolonged questioning. In your view, when did the reasonable suspicion have to develop? When did the trooper have to have reasonable suspicion? At the moment of the stop? No, Your Honor. At the moment he prolonged the questioning beyond the normal, the prolonged the stop in order to engage in questioning beyond that. In your view of the facts, when was that point reached? Your Honor, it was likely reached either pretty soon after he got to the car and he pulled up to Mr. Imhoff and started asking him detailed questions about his employment history and his background and then continued that questioning while Mr. Imhoff was required to be in the patrol car. And I should say, Your Honor, because the district court didn't make factual findings on prolongation, under this court's holding in Evans, the proper course, if this court is concerned that the additional questioning and the criminal background check did not prolong the stop, would be to vacate and remand for additional fact-finding on those points from the district court. Yeah, I'm just trying to pin down when you think that the questioning was prolonged because it seemed like kind of a continuous state of affairs. And so oftentimes we'll have a break where the trooper will go back to his car and then come back. But in this, it's really quite seamless. And so it's difficult for me to get the point where you think it segued from being a reasonable inquiry into prolonged. That's a very fine line to draw. And for us to say the district court got it wrong, to me, under the totality of circumstances, it's difficult for us to say at this particular second it was prolonged when there really is a continuation of the questioning. So that's why I was asking you, why is that the part? You said likely. I don't think that's good enough for us to overturn the district court. So it's, you know, I'm really at a loss as to how we're supposed to say that it was prolonged when there is no definitive time that you can give us. I understand, your honor. I think within the first 30 seconds or so of the stop, he asked for the normal process of a stop twice in the registration. But pretty soon thereafter, he starts asking detailed questions. Where do you work? Where are you going? And I think that those, that questioning is what prolonged the stop. However, I will say, counsel, let me interject a question. At some point here, didn't the officer ask your client where he was, what his destination was? Your honor, he asked him where he was going and he said he was going to North Dakota, yes, but if I'm, I might be recalling this wrong, but I thought he asked him where he was going in North Dakota and couldn't get an answer to that as to a specific destination. No, your honor. He asked him for his precise address that he was driving to. And at this point, Mr. Imhoff was being held and he was ordered to sit with Mr. Trooper Fedderhoff in his patrol car. He was separated from his phone, which had his itinerary on it. And he asked if he could return to his vehicle, get the phone and provide the information to Trooper Fedderhoff that way. And the Trooper would not allow him to do so. Thank you. Certainly, your honor. And I want to step back to Judge Rawlinson's question and just make sure I was clear on this. The existence of a based on the questioning would be a factual finding that the district court would need to make in the first instance. So we're not asking you to say that the district court got it wrong on that specific instance because there was no factual finding at all. And so at the very least, this should be remanded to the district court to make additional factual findings. And one thing I will say is that at the very least, the stop was prolonged for the records check, which took about 45 seconds to a minute just to run to call in and provide the information. But in any event, the Trooper lacked reasonable suspicion for even the dog sniff. And we marched through this in our brief, but courts in the 4th, 10th, 11th and 6th circuits have all held on very, very similar facts that rental, that short duration, long distance travel in a rental car is insufficient evidence of criminality to justify prolonging the traffic stop. And that's consistent, excuse me. Notably absent is the 9th circuit. So what have we said about that? Yes, your honor. In McDuffie, an unpublished case from the circuit that this court reached the same conclusion. It was literally the exact same route from Las Vegas up in Montana. We don't have a published case saying that. So we don't have any precedent telling us that we have to come out one way or the other on this point. Not in the drug context. In the immigration context, US versus Rodriguez, this court's 1992 case is almost directly on point. It said that the reasonable suspicion analysis shouldn't be stated at a level of generality to sweep in scores of innocent motorists. And it gave us an example of a consistent profile from law enforcement individuals that drive in rental cars on routes known for the trafficking, for immigration law violations. And this court criticized that as too generalized and sweeping in far too many innocent motorists. Do you agree that the question before us is when the traffic mission ended? Is that the key question here? No, under the recent Supreme Court case, Rodriguez, the real question, the question is essentially whether the traffic stop was prolonged. And really the key question, that's one of the questions. The second question would be, we know it was prolonged and the government concedes it was prolonged for the dog sniff. And so whether or not that dog sniff was supported by reasonable suspicion. I'm sorry, I hope I answered your question. Do you think the records check unreasonably prolonged the stop? I do, Your Honor. And why is that? It took approximately two to four minutes and it took a minute just to call it in. And that's enough of a prolongation to require reasonable suspicion. Case says that a records check that takes longer than some prescribed period of time is unreasonable. This court's case in Gorman and in Abbott both say that, Your Honor. And I want to be clear, I'm sorry. Say what precisely? Say what precisely? Because I thought your position was, if it takes too long to do the records check, because you said 45 seconds or something, is that your view? That there's a precise number of seconds or minutes that one has to do a records check before the prolongation is unreasonable? No, Your Honor. And I want to be clear about this. What I'm talking about when I discuss the records check is the non-routine records check specifically looking for a criminal history of drug trafficking or for drug crimes. Mr. Trooper Federhoff testified that this was a non-routine check that he did. It was called a Code 28 III that he calls in exclusively when he suspects the motorist of having engaged in criminal drug activity. And in Gorman and in Abbott, this court held that that type of non-routine criminal background track requires independent reasonable suspicion. I'm distinguishing from the normal license check. Right. So in this case, I thought the district court found that he contacted dispatch to get the history and a criminal history. So was there a delineation between the driver's history and the criminal history research? I believe that the criminal history came back in two minutes when they ran the license and registration. However, Mr. Trooper Federhoff's testimony was actually that he ran, that his in-car computer was capable of running the driver's license, the license plate. It came up valid on his in-car computer. And then the dispatch actually came up invalid, but he knew them to be wrong and didn't consider that at all. And so he did it. He was able to instantly do all of the checks necessary for the traffic stop. He called dispatch to go one step further and to research specifically criminal drug activity. And under this court's holdings and evidence that in Gorman, that non-routine criminal background check is what required independent reasonable suspicion. I apologize, Your Honor. I was just going to say, you're over your time. I want to give you a little time for rebuttal. I appreciate it, Your Honor. If you could conclude now, why don't you plan on doing two minutes of rebuttal after Ms. Patton makes her argument. Certainly, Your Honor. Okay, Ms. Patton. Thank you, Your Honors. May it please the Court, Julie Patton on behalf of the United States. I want to address the appellant's arguments that the stop is prolonged when he runs a criminal history check. But that's not when the stop is prolonged. The stop is prolonged 13 minutes in when he decides to deploy his canine because when he's running this criminal history check, it's happening simultaneously with the records check, the driver's license status, the insurance and registration check, as well as simultaneously when he's asking these basic questions trying to ascertain an address from the defendant, Mr. Imhoff. And throughout this 13 minutes from the time Trooper Federhoff pulls over Mr. Imhoff to the time that he deploys the canine, the trooper identified several factors that gave him reasonable suspicion to deploy the canine. It was these struggles that Imhoff had in responding to basic questions that the alarm bell started to go off. But they really went off when about a minute and a half into this traffic stop, Trooper Federhoff learned that the rental contract did not align with Imhoff's story that he was returning to work in the Bakken oil fields. It was a five-day round-trip rental contract due back in Vegas in three days. Yet Mr. Imhoff said he was returning to work in the Bakken oil fields. And so the trooper testified that it was both his personal and professional experience that there isn't an oil field schedule, an oil field worker's schedule that would align with that contract. Then when he's probed further about the information about where he's headed in North Dakota, he can give absolutely no information. He just continuously called it the Bakken or the oil fields. He doesn't say he's headed to Watford City or to Minot. And it's all in context of being asked for his address that he starts to change his story about where he's headed. First in response to the trooper's question about the lack of luggage, he says he has a house. He later changes his story that he rents a room. And then again when he's asked for the address to either of these purported residences, he can't give it and then changes it again to say he was in company housing. Counsel, do you agree with the district court that Mr. Imhoff did not dispute the legitimacy of the initial stop at only the dog sniff? Is that your position? Your Honor, that's my position that he did based upon the brief, based upon the hearing at which I was present, that really the focus of it was mostly whether there was reasonable suspicion to run the dog. But even so, I think the stop was not prolonged until the dog was deployed. And so the other kind of inconsistency in Mr. Imhoff's story began when he was also discussing his employment. He said he was going back to work, but later when asked where he works, much later in the video than the initial questions that Mr. Jindal says that he's immediately questioned about his employment, he changes the story again that he's in between jobs transitioning. And so it's these vague answers, these inconsistent answers, the fact that his story doesn't align with the rental contract, begins to get reasonable suspicion. And then when combined with the other factors that the trooper observed, the fact that Mr. Imhoff is the lone occupant of a rental minivan traveling on a known drug corridor, headed from a source city, Las Vegas, to a known drug destination. And the trooper also looked at the interior of the car, which painted a picture of someone who was trying to get from point A to point B as quickly as possible, because it was littered with fast food wrappers and cigarettes and energy drinks. And while those three things might be innocuous on their own, when you add it all up to these, inconsistencies and the inability for Mr. Imhoff to provide basic information during this routine traffic stop, it all adds up to reasonable suspicion. How much experience did this trooper have related to the drug trade? Trooper Federhoff had been a Montana Highway Patrolman for over 16 years at the time of this stop. And he has specialized training in drug interdiction. He's specifically assigned to a drug interdiction unit that patrols this stretch of interstate, specifically looking for this type of behavior. So what is the significance of the trooper's experience in our assessment of the issue of reasonable suspicion? Well, as you're aware, the court can defer to local law enforcement and their experiences and their training when they're identifying situations such as these. And the trooper testified at length why his training and his experience led him to believe that this was consistent with a drug run. It was the use of the minivan, the rental minivan. It was the fact that, you know, when he's looking in the interior of the vehicle, it was all of these trappings of someone who was engaging in travel. It was that training, that experience that led him to believe pretty quickly that something was amiss here. Well, he thought something was amiss even before he stopped the car, didn't he? I mean, that's what the district court said, that the whole point of this was because he thought it was a drug dealer. Trooper Federhoff did testify at the hearing that he noticed the vehicle because it was speeding, but also because it had vented windows and it was a cold February morning, much like it is here today. And to him, that was indicative of someone who's trying to air out their vehicle. And then when he stopped it, he noticed it was a rental, and then things started to add up from there. Counsel, if we're in the record, can we go to before the dog sniff? Where can we find, confirm that in the record? Your Honor, I think that the brief is attached to the excerpts of record. I'm going to have to pull that up. But I also believe that based upon the judge's order that's also in the excerpts of record, it would be... But he's challenging the judge's order. So I would, it would be helpful if we could point us to where in the proceedings, the hearing, the suppression hearing, the focus was on the initial stop, the dog sniff as opposed to the initial stop. That was your representation. I would have to go through the supplemental excerpts of record to look at the entire hearing, but it is my recollection that much of defense counsel's questions were about reasonable suspicion and the questions that were posed to him. And again, it's the government's position that the stop was not prolonged until he was given the warning and told he was free to leave. And I think even so, at the point that he starts to even inquire or even run this criminal history check, he's already made several observations of the vehicle that indicate hard driving, the lack of luggage, the fact that his, the rental contract does not align with the story that is returning to work. And so he does have to continue to ask questions to try to reconcile these discrepancies. And I realize that doesn't answer your question about where it is in the record. But as you know, the supplemental excerpts of record, the hearing transcript is quite voluminous. And so I would have to go back to really pinpoint exactly. But again, it's the position of the far longer than what Mr. Jindal was putting forth. Okay, well, let me just suggest that you can take a few days and submit record sites to the court. Mr. Jindal can submit counter sites to what he'd like us to look at. So it's the, Ms. Bannon, are you, is your argument clear? If there are no further questions from the panel, I would rely on our brief. Thank you. And we'd ask that the court affirm the district court's denial of the motion to suppress. Thank you. So Judge Robinson, Judge Adelman, do you have any further questions? I do not. Of Ms. Bannon. Okay, no questions. So Mr. Jindal, we're giving you rebuttal time. Appreciate it, Your Honor. And the government focused most of the presentation today on sort of these perceived evasions and his inability to explain his story. But what's really happening here is that Mr. Trooper Federhoff engaged in prolonged peppering of questions to Mr. Imhoff over the course of 10 minutes. And Mr. Imhoff provided him copious amounts of information about his employment and his travels. He explained to Mr. Trooper Federhoff his line of work, the name of his employer, the name of his previous employer, his reason for visiting Las Vegas, the amount of time he spent in Las Vegas. How long do you think the whole thing should have lasted to be proper? About five or six minutes. If I had to guess, but again, our position is that there were certain discrete prolongations that are clear on this record. The running of the if it's unclear on this record whether or not the stop was prolonged for this, the questioning and the record is checked, then the proper course is to vacate and remand. There's already been a hearing on this and opposing counsel says that those were simultaneous. What's your response to that? That is a question for the district court to answer. In the first instance, we raised this in our briefing or in our motion to suppress below. And there were many, many questions asked about the period prior to the dog sniff about his about the troopers process for running these criminal background tracks about his justification for holding Mr. Imhoff in the vehicle and asking him questions. So it's just not true that the focus of the hearing was exclusively on the dog sniff. And I should say, Your Honor, I don't want to leave before emphasizing this point. Our position is that even the dog sniff was unconstitutional. And we've courts or cases from all from a number of circuits on very, very similar facts with similar minor inconsistencies between the rental car contract and stated travel plans. And the government does not distinguish these cases and their contrary cases are wholly distinguishable. And so I asked this court reverse the decision below. I want to be sure I've answered the court's questions. Thank you, Mr. Jindal. Thank you. So unless there are further questions from Judge Edelman, Judge Wellesley, and I have none. I would just like to correct a statement that I made. I do believe that the defense attorney in this case did identify in his brief, which is included at ER 67, that he was challenging the entire basically course of the stop the questions. So when he was pulled out to join him in the patrol car. So I apologize for that. Okay, thank you. Well, the the case shall now be submitted. And the parties will hear from us in due course. And again, if either of you, Mr. Jindal sort of disappeared there. I apologize. Okay. If either of you want to submit further record sites to the court, please do so in the next three days. And the court will hold off making a decision until there's time. For you to do that. But this case will now be submitted. And we thank the parties for their excellent arguments. This was very nicely argued by Mr. Jindal, and Miss Patton. And we we need lots of help to decide these hard cases. So we thank the advocates for giving us that. This case will now be submitted. I think that concludes for the day. So the court will now adjourn until tomorrow. Thank you. Thank you all. This court for the discussion standing is adjourned.
judges: GOULD, RAWLINSON, Adelman